Collette Stark
2175 Cowley Way
San Diego, CA 92110
(619) 347-0726
videosolutions@me.com

**FILED**

Nov 08 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ MelissaE _____ DEPUTY

Plaintiff in Pro Per

# THE UNITED STATES FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Collette Stark, an individual,
          Plaintiff,

vs.

Project Eco, a California corporation;
Simon Poonka; an individual;
Poonka Enterprises, Inc., a California
corporation;
Eco Home Solutions, a California
corporation;

          Defendants.

Civil Case No. **'18CV2570 AJB KSC**

**COMPLAINT**

1. **TCPA 47 USC §227(b)(1)(A)**
2. **TCPA 47 USC §227(c)(5)**
3. **CIPA PC §637.2 and §637.2**

**JURY TRIAL DEMANDED**

18CV

May it please the Court, Plaintiff Collette Stark (herein "Plaintiff" or "Stark"), for this complaint against Defendants Project Eco and its present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents ("PROJECT ECO"); Simon Poonka, an individual and as officer of Project Eco, of Eco Home Solutions and Poonka Enterprises; Poonka Enterprises, Inc., a California corp, Eco Home Solutions, a California corporation, alleges as follows:

## I.    INTRODUCTION

1.     The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter alia*, illegal telemarketing to Plaintiff's DNC registered cellular phone through the use of an ATDS is expressly alleged against Defendants Project Eco and its present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents ("PROJECT ECO"); Simon Poonka, ("Poonka") an individual and as officer of Project Eco, of Eco Home Solutions and of Poonka Enterprises; Poonka Enterprises, a California corporation ("Poonka Enterprises"), Eco Home Solutions, a California corporation ("Eco Home").

2.     The CIPA cause of action (PC §§§632, 637.2, 632.7) filed herein for illegal recording of the telemarketing call to Plaintiff's phone without disclosure of the recording is alleged against Defendants Project Eco and its present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents ("PROJECT ECO"); Simon Poonka, an individual and as officer of Project Eco, of

Eco Home Solutions and Poonka Enterprises; Poonka Enterprises, a California corporation, Eco Home Solutions, a California corporation.

3.    Nature of Action.  Something is rotten in San Diego, to wit: Project Eco, Poonka, Eco Home, and Poonka Enterprises have been bombarding Ms. Stark, without her consent, with autodialed and prerecorded calls ("robocalls") as well as "live-transfer" calls using an ATDS as defined by the 9th Circuit in the *Crunch[1]* case.  Ms. Stark begged Project Eco,  Poonka, Eco Home, and Poonka Enterprises to stop these illegal calls, but since then, Defendants Project Eco,  Poonka, Eco Home, and Poonka Enterprises and its hired and controlled agents have robocalled Plaintiff eight more times.  Ms. Stark brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in hopes that an injunction and damages will encourage Project Eco,  Poonka, Eco Home, and Poonka Enterprises to change their ways.   The Court needs to make illegal telemarketing more expensive than actually complying with the law.

## II. PARTIES

4.    Plaintiff Collette Stark is a citizen of California who conducts business in California, in this District.

5.    Defendant PROJECT ECO is a California corporation organized under the laws of California with its principal place of business located at 8170 Ronson Road,

---

[1] *Jordan Marks vs. Crunch San Diego, LLC*, 14-56834 (filed September 20, 2018) by Judge Ikuta

18CV

Suite A, in San Diego, California 92111.  PROJECT ECO does business in this District and throughout the United States.

6.     PROJECT ECO is vicariously liable for the acts of its telemarketing lead brokers because PROJECT ECO told, instructed and ordered them to telephone solicit Stark at 619-347-0726 multiple times.  PROJECT ECO hired others to illegally call Plaintiff multiple times and then, eventually provided the information on Plaintiff to its agents who again violated the TCPA and illegally telemarketed Plaintiff with an ATDS.

7.     Poonka Enterprises, Inc (SOS C4058507), Eco Home Solutions, and PROJECT ECO, are California corporations that have knowingly and intentionally hired, directed and ordered it agents to obtain construction leads and appointments through telemarketing activities in violation of the federal TCPA, and CIPA laws of California.

8.     Poonka Enterprises, Inc is located at 3309 Kennelworth Lane, Bonita, CA 91902.

### III. JURISDICTION AND VENUE

9.     <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over the Plaintiffs' claim arising

under California's Unfair Competition Law ("UCL"), Civil Code

§1770(a)(22)(A)[2],  and California Invasion of Privacy Act, Penal Code §637.2,

§632.7 because those claims:

> a.  arises from the same nucleus of operative fact, i.e., Defendant's
>
>     telemarketing robocalls to Plaintiff;
>
> b.  adds little complexity to the case; and
>
> c.  relies on the same nucleus of facts, so it's unlikely to predominate
>
>     over the TCPA claims.

10.    Personal Jurisdiction. This Court has personal jurisdiction over Project Eco,

Poonka, Eco Home, and Poonka Enterprises because a substantial part of the

wrongful acts alleged in this Complaint were committed in California. For

example, Project Eco,  Poonka, Eco Home, and Poonka Enterprises made illegal

telemarketing robocalls to Ms. Stark, while she was in California.

11.    "Where, as here, there is no applicable federal statute governing personal

jurisdiction, the district court applies the law of the state in which the district court

sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d

1199, 1205 (9th Cir. 2006); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316,

---

[2] Plaintiff is not expressly propounding a cause of action for Civ. §1770(a)(22)(A) or B&P §17200 at this time, but rather is merely putting Defendants on notice that leave to amend will be sought after discovery.  A motion to dismiss these as causes of action would be frivolous and sanctionable under Rule 11.

1320 (9th Cir. 1998). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdiction analyses under state law and federal due process are the same." *Yahoo!*, 433 F.3d at 1205 (citing *Panavision*, 141 F.3d at 1320). Due process requires that Project Eco, Poonka, Eco Home, and Poonka Enterprises must have minimum contacts with the forum such that the assertion of jurisdiction in that forum "'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2005) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

12.     There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55, 187 L. Ed. 2d 624 (2014). "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in 'continuous and systematic general business contacts,' that 'approximate physical presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)) (internal citations omitted). To establish specific jurisdiction, Plaintiff must show: "(1) [t]he non-resident defendant . . . purposefully direct[ed] [its] activities or consummate[d] some transaction with the forum or resident thereof; or perform some act by which

[it] purposefully avail[ed] [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* at 802.  At least two courts in the 9th have found specific jurisdiction in circumstances similar to this case. One court found personal jurisdiction where the out-of-state defendant sent numerous unsolicited fax advertisements to a California-based plaintiff. *Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, at *2, 8-10 (N.D. Cal. Jan. 5, 2009). Another court found personal jurisdiction where the defendant operated a website that the California-plaintiff used, called and emailed the plaintiff numerous times, and the plaintiff's claims arose out of those contacts. *Heidorn v. BDD Mktg. & Mfg. Co., LLC*, No. C-13-00229 JCS, 2013 U.S. Dist. LEXIS 177166, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013). *Drew v. Lexington Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *4-7 (N.D. Cal. Apr. 18, 2016)

13.    Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims occurred in this District and because Project Eco, Eco Home, and Poonka Enterprises are required to be registered with the California Secretary of State and do substantial business

18CV

in this District.  Project Eco,  Poonka, Eco Home, and Poonka Enterprises have purposefully directed its activities to California and advertises that it does business in California.

### IV. TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

14.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

15.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a … cellular telephone service." 47 U.S.C. §227(b)(1)(A)(iii).

16.    The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17.    "Month after month, unwanted [communications], both telemarketing and informational, top the list of consumer complaints received by the [Federal Communications] Commission." *In re Rules and Regulations Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7991 ¶ 1 (2015).

18.    "The FTC receives more complaints about unwanted calls than all other

complaints combined." Comment of the Staff of the Federal Trade Commission's

Bureau of Consumer Protection, *In re Rules and Regulations Implementing the*

*TCPA of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at p. 2;

FCC 16-57 (June 6, 2016), available at

https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-

ftc-bureau-consumer-protection-federal-communications-commissionrules-

regulations/160616robocallscomment.pdf.

19.     In 2017, the FTC received 4,501,967 complaints about robocalls, compared

with 3,401,614 in 2016. Federal Trade Commission, FTC Releases FY 2017

National Do Not Call Registry Data Book and DNC Mini Site (Dec. 18, 2017),

https://www.ftc.gov/news-events/press-releases/2017/12/ftcreleases-fy-2017-

national-do-not-call-registry-data-book-dnc.

20.     The dialing system used by Project Eco,  Poonka, Eco Home, and Poonka

Enterprises is the Five9 predictive dialer, a dialing system that is subject to the

TCPA's ATDS protections.

21.     The Five9 predictive dialer works by loading a list of telephone numbers

electronically into the dialer, and with the push of a single button, calls are made

automatically and sequentially from that list.

22.     The TCPA makes it unlawful "to initiate any telephone call to any

residential telephone line using an artificial or prerecorded voice to deliver a

message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

23.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

24.     The TCPA makes it unlawful to make telemarketing solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

25.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

26.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

27.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

28.     The FCC requires "prior express written consent" for all autodialed or

prerecorded telemarketing robocalls to wireless numbers and residential lines. In

particular:

> [A] consumer's written consent to receive telemarketing robocalls
> must be signed and be sufficient to show that the consumer: (1)
> received clear and conspicuous disclosure of the consequences of
> providing the requested consent, *i.e.*, that the consumer will receive
> future calls that deliver prerecorded messages by or on behalf of a
> specific seller; and (2) having received this information, agrees
> unambiguously to receive such calls at a telephone number the
> consumer designates. In addition, the written agreement must be
> obtained without requiring, directly or indirectly, that the agreement
> be executed as a condition of purchasing any good or service. *In the
> Matter of Rules & Regulations Implementing the Tel. Consumer Prot.
> Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and
> internal quotation marks omitted).

29.    FCC regulations "generally establish that the party on whose behalf a

solicitation is made bears ultimate responsibility for any violations." *In the Matter

of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10

FCC Rcd. 12391, 12397 ¶ 13 (1995).

30.    The FCC confirmed this principle in 2013, when it explained that "a seller

… may be held vicariously liable under federal common law principles of agency

for violations of either section 227(b) or section 227(c) that are committed by

third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish

Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

31.    The 9th Circuit has defined an ATDS as follows: "we conclude that the

statutory definition of ATDS is not limited to devices with the capacity to call

numbers produced by a "random or sequential number generator," but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers."

32.     Senator Fritz Hollings complained, "[c]omputerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings). Recipients deemed that "automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons." S. Rep. No. 102-178, at 4.

33.     The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556). The Federal Communications Commission ("FCC")— which has authority to implement the TCPA's provisions, *see* 47 U.S.C. § 227(b)(2)— has stated that a plaintiff, to establish a TCPA violation, "need only

show that [the Defendant] called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012).  Because the Defendant has violated multiple subsections of 47 U.S.C. §227, including but not limited to 47 U.S.C. §227(b)(1)(A) and §227(c), then Defendant has committed the criminal violation of 47 U.S.C. §501.

34.    "[P]rior express consent is an affirmative defense, not an element of the claim," meaning a plaintiff "need not plead that he did not give his prior express consent." *Manfred v. Bennett Law, PLLC*, No. 12–CV–61548, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012).  Rather, "[t]he only thing [a] [p]laintiff must plead to establish a violation of the TCPA is that the [d]efendants left voicemail messages at a number assigned to a cellular telephone service using an automatic dialing system or an artificial or pre-recorded voice." Id. (denying motion to dismiss for failure to state a claim where the plaintiff alleged "that [the] [d]efendants used an Automatic Telephone Dialing System or an artificial or pre-recorded voice to place the telephone calls to [the] [p]laintiff's cellular phone.").

35.    Plaintiff Stark alleges that Defendants Project Eco,  Poonka, Eco Home, and Poonka Enterprises placed repeated automated telephone calls to Plaintiff Stark's cell phone (619-347-0726) from Defendant Project Eco,  Poonka, Eco Home, and Poonka Enterprises phones and that the calls exhibited signs of being made with an

Automated Telephone Dialing System, including repeated telemarketing calls to

Plaintiff Stark within a period of time and the presence of a pause or click (which

is proven by the recording), which is commonly associated with an Automated

Telephone Dialing System (ATDS).  Those allegations are true and are sufficient

to establish the elements of a TCPA claim.  Defendants Project Eco, Poonka, Eco

Home, and Poonka Enterprises telemarketing agents also admitted on the call that

they used an ATDS to initiate the dialing of the call to Plaintiff Stark.

36.     Fictitious defendant ABC, Inc (a Doe Defendant to be named after discovery

reveals the same) that was hired by Project Eco, Poonka, Eco Home, and Poonka

Enterprises to knowingly and intentionally make robo-dialed calls to Plaintiff Stark

with a pre-recorded voice message that was used for telemarketing purposes

between approximate July 31, 2018 and November 7, 2018.  ABC, Inc has

subsequently made illegal telemarketing calls to Stark and discovery may very well

lead to adding ABC, Inc as a defendant herein.

37.     California Civil Code section 1770(a)(22)(A) prohibits prerecorded

telemarketing messages.

38.     As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA

case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act...is well known for
> its provisions limiting junk-fax transmissions.  A less-litigated
> part of the Act curtails the use of automated dialers and
> prerecorded messages to cell phones, whose subscribers often

are billed by the minute as soon as the call is answered--and
routing a call to voicemail counts as answering the call.  An
automated call to a landline phone can be an annoyance; an
automated call to a cell phone adds expense to annoyance.
*Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 638 (7ᵗʰ Cir. 2012)*

39.     As the Court unanimously held in *Haines v. Kerner*, 404 U.S. 519 (1972), a

pro se complaint, "however inartfully pleaded," must be held to "less stringent

standards than formal pleadings drafted by lawyers" and can only be dismissed for

failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief.'" Id., at 520-

521, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)." *Estelle v.

Gamble* (1976) 429 U.S. 97, 106 [97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261].

## V. STANDING

40.     The court must evaluate lack of statutory standing under the Rule 12(b)(6)

standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However,

because Plaintiff is proceeding pro se, her complaint "must be held to less stringent

standards than formal pleadings drafted by lawyers" and must be "liberally

construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming

pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's

treatment of pro se filings after *Twombly* and *Iqbal* remain the same and pro se

pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338,

342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir.

2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally").

41.   Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    A. A valid injury in fact;

    B. which is traceable to the conduct of Defendants Project Eco, Poonka, Eco Home, and Poonka Enterprises;

    C. and is likely to be redressed by a favorable judicial decision. See, *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560. In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

**The "Injury in Fact" Prong.**

42.   Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (*Id.*)*. For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists. In the present case, Plaintiff was called on her cellular phone at least nine (9) times by Defendants Project Eco, Poonka, Eco Home, and Poonka Enterprises. In fact, Plaintiff expressly informed Defendants Project Eco, Poonka,

18CV

Eco Home, and Poonka Enterprises to cease and desist from all future telemarketing on the very first calls they made.  Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637, 638 (7th Cir. 2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the National Do-Not-Call Registry (hereinafter, "DNC Registry"). As well, Plaintiff had no prior business relationship with Defendants Project Eco, Poonka, Eco Home, and Poonka Enterprises prior to receiving the seriously harassing and annoying calls as well as the extortionate threats by Jeff Smith who stated that he recorded Plaintiff while he was inside her home.   All of Plaintiff's injuries are concrete and de facto. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.   In the instant case, it was Plaintiff's phone that was called and it was Plaintiff who answered the calls. It was Plaintiff's personal privacy and peace that was invaded by Defendants Project Eco, Poonka, Eco Home, and Poonka Enterprises persistent phone calls using an ATDS and a pre-recoded message, despite Plaintiff having no prior business relationship with Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises and Plaintiff's attempt to avoid the damage by registering her number on the DNC Registry.

18CV

**The "Traceable to the Conduct of Defendant" Prong**

43.     The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that her injury is traceable to the conduct of Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises.  In the instant case, this prong is met by the fact that the calls to Plaintiff's cellular phone were placed either by Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises directly, or by Defendant' agent at the express direction and control of Defendant Project Eco.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten factor test[3] from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong**

44.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each call made by Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial

---

[3] 1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities [and the place of work], 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

damages suffered by Plaintiff.  Furthermore, Plaintiff's Prayers for Relief request

injunctive relief to restrain Defendant Project Eco,  Poonka, Eco Home, and

Poonka Enterprises from the alleged abusive practices in the future. The award of

monetary damages and the order for injunctive relief redress the injuries of the past

and prevent further injury in the future. Because all standing requirements of

Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v.*

*Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue Defendant Project Eco,

Poonka, Eco Home, and Poonka Enterprises on the stated claims.

45.    "…[C]ourts in the Ninth Circuit have held that "allegations of nuisance and

invasions of privacy in TCPA actions are concrete" injuries that establish standing.

See *Mbazomo v. ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist. LEXIS

170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016).  In *Mbazamo*, the court

held that a violation of the TCPA represents a concrete injury because "[t]he

history of sustaining claims against both unwelcome intrusion into a plaintiff's

seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have]

traditionally been regarded as providing a basis for a lawsuit.'" Mbazomo, 2016

U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at

1549-50). The court declined to follow Romero, explaining that Romero

"improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A

plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged

18CV

harms suffered." Id. *Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

46.     "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo.* at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite distinct from particularization. *Id.* An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id.* In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id.* However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id.* at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id.* at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at

18CV

1549.  In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id.*

47.     The TCPA provides a private right of action for violations of § 227(b) and the associated regulations. 47 U.S.C. § 227(b)(3).  Subsection (b) prohibits calls (other than for an emergency) to a telephone number assigned to a cellphone by way of an automatic telephone dialing system ("ATDS") without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).  In the Ninth Circuit, a plaintiff must show: (1) "the defendant called a cellular telephone number; (2) "using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).  A plaintiff must also be a "called party" within the definition of the TCPA. *Charkchyan v. EZ Capital*, No. 2:14-cv-03564-ODW (ASx), 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015)

48.     First, a text message and a prerecorded robotic voice message call are both a "call" for purposes of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-54 (9th Cir. 2009).  Plaintiff supports these allegations with activity logs from July 2018 to November 2018 documenting the nine calls. This element is satisfied.  To wit:

> 7/31/18 at 12:44 PM from (702)650-5676
> 7/31/18 at 1:04 PM from (415) 692-3600
> 8/1/18 at 3:50PM from (702) 650-5676
> 8/1/18 at 3:50PM from (702) 650-5676
> 8/1/18 at 3:58 PM from (702) 650-5676

8/1/18 at 4:55 PM from (619) 277-4745
8/1/18 at 5:24 PM from (858) 337-9787
8/3/18 at 12:42 PM from (702) 650-5676
8/2/18 at 10:42 PM from (702) 650-5676

49.     Second, Plaintiff adequately pleads use of an automatic telephone dialing system ("ATDS"). The TCPA defines ATDS to mean "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The focus of the inquiry is on the equipment's *capacity* to perform this function. *See Satterfield*, 569 F.3d at 951. "Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id.* Defendant called with a prerecorded message, which, by definition requires an auto-dialer that operates without human intervention.

50.     "In proving a defendant's use of [an] ATDS under the TCPA, courts have recognized the difficulty a plaintiff faces in knowing the type of calling system the defendant used without the benefit of discovery." *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3. For example, in *Charkchyan*, the plaintiff's allegations supported the use of an ATDS. *Id.* In that case, the plaintiff described the messages received "as being formatted in SMS short code, '670-76,'" and as being impersonally scripted. *Id.* This was enough to establish the defendant used an ATDS. *Id.* Similarly, in *Kramer v. Autobytel*, the plaintiff alleged

18CV

sufficient facts to support a reasonable inference that the Defendant used an ATDS: "[The plaintiff] described the messages from SMS short code 77893, a code registered to [a defendant]. The messages were advertisements written in an impersonal manner. [And,] [the plaintiff] had no other reason to be in contact with the Defendant." 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010). In contrast, the plaintiff in *Williams v. T-Mobile USA, Inc.* failed to plead more than "legal conclusions couched in fact" when asserting the "barrage of calls and . . . frequency and pattern of the calls provide[d] the necessary factual support." No. 15-cv-3384-JSW, 2015 U.S. Dist. LEXIS 140077, 2015 WL 5962270, at *2-3 (N.D. Cal. Oct. 14, 2015). *See also Daniels v. ComUnity Lending, Inc.*, No. 13cv488-WQH-JMA, 2014 U.S. Dist. LEXIS 1606, 2014 WL 51275, at *5 (S.D. Cal. Jan. 6, 2014) (ATDS use not plausible because the allegations indicated the Defendant directed calls specifically towards the plaintiff).

51.    Here, Plaintiff alleges that Defendant Project Eco,  Poonka, Eco Home, and Poonka Enterprises contacted her using an "automatic telephone dialing system." This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, each of the calls are available to the Court as audio recordings of the robotic voice message that initiated the calls. Second, the calls are impersonal advertisements: they do not address Plaintiff personally and they advertise Defendant Project Eco,  Poonka, Eco Home, and Poonka

18CV

Enterprises products. Third, Plaintiff declares that she has never heard of Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises, visited any location operated by Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises prior to the harassing and annoying calls, nor provided her cellular telephone numbers to Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises or consented to receive calls from Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises. Plaintiff never went to any web page to sign up with or consent to calls by Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises. Plaintiff also has had no prior business relationship with Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises. Plaintiff had no reason to be in contact with Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises nor has she ever purchased any kind of product or service from Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises or its lead source. Plaintiff's allegations are sufficient to establish that Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises used an ATDS in sending their prerecorded solicitation messages and in making live telemarketing calls to Plaintiff.

52.     Third, Plaintiff adequately pleads that the conduct was without her prior express consent. "Prior express consent" under the TCPA is "consent that is clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955; *Charkchyan*, 2015 U.S.

Dist. LEXIS 76560, 2015 WL 3660315 at *3.  Moreover, "[t]he Federal

Communications Commission ('FCC'), tasked with instituting implementing

regulations for the TCPA, added an express *written* consent requirement in the case

of messages that 'include[] or introduce[] an advertisement or constitute[]

telemarketing.'"  *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 U.S.

Dist. LEXIS 12060, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (citing 47

C.F.R. § 64.1200(a)(2)).  An "advertisement" includes "any material advertising

the commercial availability or quality of any property, goods, or services." 47

C.F.R. § 64.1200(f)(1).  "Telemarketing" means the initiation of a telephone call or

message for the purpose of encouraging the purchase or rental of, or investment in,

property, goods, or services, which is transmitted to any person." *Id.* §

64.1200(f)(12).  Establishing prior express consent of the called party "is an

affirmative defense for which the defendant bears the burden of proof."

*Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.

53.    In *Charkchyan*, the plaintiff did not give prior express consent. *Id.* There, the

plaintiff claimed: "(1) he [was] the current subscriber to the cellular telephone at

issue; (2) he [had] never heard of [the defendant]; (3) he [had] never visited any

location operated by [the defendant]; and (4) he [had] never provided his cellular

number to [the defendant], nor consented to receiving calls from [the

18CV

defendant]." *Id.* Where the defendant failed to provide any conflicting evidence, this was sufficient. *Id.*

54.    Similarly, in Plaintiff's case, the allegations establish that she did not give prior express consent. She declared that she was "the regular user and subscriber to the cellular telephone number at issue." She also declared that she has "never heard of [Defendant], visited any location operated by [Defendant], provided [his] cellular telephone number to [Defendant,] or consented to receive text messages from [Defendant]." As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that she did not give prior express consent authorizing Defendant Project Eco to send the prerecorded messages. Furthermore, the calls promote the sender's illegal solar panel business and fall within the FCC's definition of an advertisement and/or telemarketing. Thus, express written consent was required, and there is no evidence of such. This element is consequently satisfied.

55.    Fourth, Plaintiff sufficiently pleads that she was the "called party." To have standing under the TCPA, a plaintiff must be the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3, *4; 47 U.S.C. § 227(b)(1)(A). A telephone service subscriber is the "called party" within the meaning of the TCPA. *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3; *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546, 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011). Here,

18CV

Plaintiff declares that she was "the regular user and subscriber to the cellular phone number" that received the calls and messages. Plaintiff is therefore the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3. *Drew v. Defendant Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *11-16 (N.D. Cal. Apr. 18, 2016)

## VI. FACTUAL ALLEGATIONS

### A. PROJECT ECO

56.    One of PROJECT ECO's strategies for marketing its services is placing telemarketing robocalls to those who have not consented to receive such solicitations, including Plaintiff.

57.    PROJECT ECO uses equipment that has the capacity to store or produce random or sequential telephone numbers to be called and that includes autodialers and predictive dialers (each an "automatic telephone dialing system" or "ATDS"). Plaintiff heard a balloon popping sound along with a pause and a click at the beginning of each telemarketing call made to Plaintiff by the lead company and by PROJECT ECO.

58.    A lead company sold leads to PROJECT ECO. Defendant Project Eco knows of and is aware of each of the other Defendant's duties, responsibilities and function within the telemarketing operation. Defendant Project Eco is a co-conspirator with each other Doe Defendants in this matter. They all know each

other, they all talk to eachother.  They have all designed, planned and orchestrated the telemarketing scheme and scam together.

**B. Plaintiff**

59.    Plaintiff Collette Stark is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**C. Telephone number 619-347-0726**

60.    A phone number beginning 619-347-0726 is registered to Ms. Stark.

61.    619-347-0726 is on the National Do Not Call Registry.

62.    Ms. Stark answers calls made to 619-347-0726.

63.    Ms. Stark pays the phone bills for 619-347-0726.

**D. PROJECT ECO's Illegal Telemarketing Robocalls to Plaintiff**

64.    On July 31, 2018, at 12:44 PM, from 702-650-5676 called to 619-347-0726, which is Ms. Stark's cellular telephone, and caused her cell phone to ring. Ms. Stark picked up. The person on the other end wasn't anyone Ms. Stark knew.  In fact, it wasn't a person at all; it was a prerecorded voice. The voice advertised merchant card solutions.

65.    Plaintiff has never heard of Project Eco,  Poonka, Eco Home, and Poonka Enterprises and had not given permission to call her, let alone with a telemarketing robocall. Ms. Stark was surprised and frustrated to be interrupted by a prerecorded solicitation to a phone number that had long been on the National Do No Call

Registry.  August 1, 2018, at 3:50 PM, a call to 619-347-0726 caused Ms. Stark's cell phone to ring again, from 702-650-5676.  Again it was a prerecorded voice, again advertising merchant card processing, again from Project Eco,  Poonka, Eco Home, and Poonka Enterprises.

66.    It didn't stop there. *PROJECT ECO placed at least 9 more telemarketing robocalls to Ms. Stark.*  The calls on August 1, 2018 came from 619-277-4745 and 858-337-9787 which turns out to be totally spoofed phone numbers.  The agent on the phone said he was with PROJECT ECO.

67.    Poonka fraudulently uses Project Eco, Eco Home Solutions and Poonka Enterprises to evade the TCPA telemarketing laws.  Poonka has these three different corporations in order to hide, obfuscate and misleading those that he harms in order to conceal his true identity.

68.    Most of these robocalls used a prerecorded or artificial voice, while the rest were marked by an unnatural click or pause at the beginning—signaling to Ms. Stark that the call was placed by an ATDS rather than manually dialed by a person.

69.    Nine of PROJECT ECO's telemarketing robocalls were made to Ms. Stark while she was in California, in this District.

70.    More than nine of PROJECT ECO's telemarketing robocalls were made to Ms. Stark after PROJECT ECO knew of her desire to never be solicited via telemarketing calls, which is publicly known in this District.

18CV

71.    Ms. Stark repeatedly asked Project Eco,  Poonka, Eco Home, and Poonka Enterprises to stop calling.

72.    Due to the massive volume of robocalls made by Defendant Project Eco, Poonka, Eco Home, and Poonka Enterprises to her, Plaintiffs' investigation into the calls and their illegal features (e.g., prerecorded voices and placement by an ATDS, as manifested by beginning with an unnatural click or pause) is ongoing. Based on what is known to Plaintiff so far, the following table summarizes some of the non-emergency telemarketing robocalls placed by Project Eco,  Poonka, Eco Home, and Poonka Enterprises to Plaintiff:

    7/31/18 at 12:44 PM from (702)650-5676
    7/31/18 at 1:04 PM from (415) 692-3600
    8/1/18 at 3:50PM from (702) 650-5676
    8/1/18 at 3:50PM from (702) 650-5676
    8/1/18 at 3:58 PM from (702) 650-5676
    8/1/18 at 4:55 PM from (619) 277-4745
    8/1/18 at 5:24 PM from (858) 337-9787
    8/3/18 at 12:42 PM from (702) 650-5676
    8/2/18 at 10:42 PM from (702) 650-5676

There were additional calls because the 7/31/2018 calls demonstrated that the caller already had personal information of Plaintiff including her name, age and address.  Discovery will force Defendants to provide evidence on the prior calls.

**VII. FIRST CLAIM FOR RELIEF**

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

73.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

18CV

74.   The foregoing acts and omissions of Project Eco,  Poonka, Eco Home, and Poonka Enterprises and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to the cellular telephone number of Plaintiff without prior express written consent.

75.   Defendant Project Eco,  Poonka, Eco Home, and Poonka Enterprises in this matter is vicariously liable for the acts and actions of each of the other Doe Defendants under the *Gomez* case from the US Supreme Court handed down on January 20, 2016.

76.   Plaintiff has no pre-existing business relationship with Defendant Project Eco,  Poonka, Eco Home, and Poonka Enterprises.

77.   Defendant Project Eco,  Poonka, Eco Home, and Poonka Enterprises are not a non-profit or not-for-profit entity.

78.   Defendant Project Eco,  Poonka, Eco Home, and Poonka Enterprises are not a political organization.

79.   Defendant Project Eco,  Poonka, Eco Home, and Poonka Enterprises were not taking a poll or vote.

80.   Defendant Project Eco,  Poonka, Eco Home, and Poonka Enterprises were not attempting to collect on a student loan.

18CV

81.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

82.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

83.     Plaintiff also seeks a permanent injunction prohibiting Project Eco, Poonka, Eco Home, and Poonka Enterprises and its affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without prior express written consent of the called party.

## VIII. SECOND CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Residential Telephones, 47 U.S.C. § 227(b)(1)(B))**

84.     Ms. Stark realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

85.     The foregoing acts and omissions of Project Eco, Poonka, Eco Home, and Poonka Enterprises and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by making non-emergency prerecorded telemarketing calls to the residential telephone 619-347-0726 number of Ms. Stark without prior express written consent.

86.     Plaintiff has no pre-existing business relationship with any of the Defendants.

87.     Defendants are not a non-profit or not-for-profit entity.

88.     Defendants are not a political organization.

89.     Defendants were not taking a poll or vote.

90.     Defendants were not attempting to collect on a student loan.

91.     Ms. Stark is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

92.     Ms. Stark is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

93.     Ms. Stark also seeks a permanent injunction prohibiting Project Eco, Poonka, Eco Home, and Poonka Enterprises and its affiliates and agents from making non-emergency prerecorded telemarketing calls to residential telephone numbers without prior express written consent of the called party.

### IX. THIRD CLAIM FOR RELIEF

**(Telemarketing Solicitations to National Do Not Call Registrants, 47 U.S.C. § 227(c))**

94.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

95.     The foregoing acts and omissions of Project Eco,  Poonka, Eco Home, and Poonka Enterprises and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

96.   Plaintiff has no pre-existing business relationship with any of the Defendant.

97.   Defendants are not a non-profit or not-for-profit entity.

98.   Defendants are not a political organization.

99.   Defendants were not taking a poll or vote.

100.   Defendants were not attempting to collect on a student loan.

101.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

102.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

103.   Plaintiff also seeks a permanent injunction prohibiting Project Eco, Poonka, Eco Home, and Poonka Enterprises and its affiliates and agents from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants Project Eco, Poonka, Eco Home, and Poonka Enterprises and Doe Defendants, jointly and severally, as follows:

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Project Eco, Poonka, Eco Home, and Poonka Enterprises violate the TCPA and CIPA;

18CV

C. An order enjoining Project Eco, Poonka, Eco Home, and Poonka Enterprises and its officers, partners, employees, affiliates and agents from engaging in the unlawful conduct set forth herein, including violation of 47 USC §501;

D. An award to Plaintiff of damages, as allowed by law under the TCPA, and not limited to the calls listed in the preliminary table above;

E. For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2);

F. $500 plus threefold damages for intentional or willful violation of the Do-Not-Call Registry for each and every call;

G. For punitive damages in an amount to be determined with exactness at trial herein;

H. For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

I. For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5 for attorneys that have been or will be hired;

J. For an injunction prohibiting Defendants Project Eco, Poonka, Eco Home, and Poonka Enterprises from ever contacting Plaintiff ever again in any

manner whatsoever, including spam texting, robodialing, and spam emailing;

K. $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

L. $1,500 for each violation of 47 CFR §64.1601(3)  caller ID spoofing;

M. $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

N. $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of business at beginning of call;

O. $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing call to cellular phone;

P. $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

Q. $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone number on the DNC registry; and

R. For any other relief that the Court deems just and proper.

## XI. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated:  November 8, 2018

/S/ *Collette Stark*
Collette Stark, Plaintiff